LIVERPOOL & LONDON & GLOBE INS. CO. et al. v. CLUNIE. HARTFORD FIRE INS. CO. et al. v. SAME. HANOVER FIRE INS. CO. et al. v. SAME. AMERICAN FIRE INS. CO. et al. v. SAME. SPRINGFIELD FIRE & MARINE INS. CO. et al. v. SAME.

(Circuit Court, N. D. California. June 27, 1898.)

Nos. 12,557, 12,563, 12,564, 12,566, and 12,567.

1. EQUITY JURISDICTION —MULTIPLICITY OF SUITS—PARTIES—MULTIFARIOUSNESS.
A court of equity will, in a single suit, take cognizance of a controversy, determine the rights of all the parties, and grant the relief requisite to meet the ends of justice, in order to prevent a multiplicity of suits, where a number of parties have separate and individual claims and rights of action against the same party, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter may be settled in one action brought by all these uniting co-complainants.

2. SAME—INEQUITABLE CONDUCT OF COMPLAINT.
The inequity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct, unconnected with the act of the

defendant which the complaining party states as his ground of action, but it must be evil practice or wrong conduct in the particular matter or transaction in respect of which judicial protection or redress is sought.

**3. SAME—ILLEGAL COMBINATIONS.**
   The fact that a number of foreign insurance companies doing business in a state are members of an alleged illegal combination to suppress competition, etc., will not prevent them from maintaining a suit to enjoin the state insurance commissioner from illegally revoking their certificates of authority to do business in the state, and canceling their bonds.

**4. FEDERAL COURTS—FOLLOWING STATE DECISIONS.**
   The federal courts are bound by the decision of the supreme court of California that a statute of that state is void, because, in disregard of an express constitutional limitation on the power of the legislature, it attempts to impose a tax for municipal purposes.

**5. FOREIGN INSURANCE COMPANIES—POWERS OF STATE INSURANCE COMMISSIONER.**
   The power of the insurance commissioner of California to revoke the certificate of authority under which a foreign company is doing business in the state arises only (1) when such a company removes an action to a federal court, and (2) when it becomes insolvent. Pol. Code, §§ 595, 600. He can cancel its bond only when defective in form or substance, or when the sureties are financially insufficient; and he has no power or discretion to do either merely on the ground that such company is a member of an illegal combination to raise insurance rates, or because it refuses to pay a tax which it claims is illegal.

**6. SAME—CONSTRUCTION OF STATUTE.**
   Pol. Code Cal. § 595, after enumerating certain duties of an insurance commissioner, further requires him to "perform all other duties imposed upon him by the laws regulating the business of insurance in this state, and enforce the execution of such laws." *Held*, that this does not enlarge his jurisdiction, or confer on him any authority to perform a duty not specified or to execute a purpose not sanctioned by the law.

T. C. Coogan (Wilson & Wilson, W. S. Goodfellow, and John Garber, of counsel), for complainants.

Bridgford & Clunie and Andrew J. Clunie in pro. per. (George D. Collins and Eugene F. Bert, of counsel), for defendant.

MORROW, Circuit Judge. Five bills in equity have been filed by 62 fire insurance companies, doing business in the state of California, against Andrew J. Clunie, insurance commissioner of the state of California, to restrain him from doing certain acts which, it is alleged, will cause the complainants irreparable injury. In bill No. 12,557 the complainants are 34 foreign corporations, viz. 21 incorporated under the laws of Great Britain and Ireland, 2 under the laws of the dominion of Canada, 7 under the laws of the empire of Germany, 2 under the laws of the republic of Switzerland, 1 under the laws of the colony of New Zealand, and 1 under the laws of the kingdom of Sweden. In bill No. 12,563 the complainants are 6 corporations incorporated under the laws of the state of Connecticut. In bill No. 12,564 the complainants are 10 companies incorporated under the laws of the state of New York. In bill No. 12,566 the complainants are 5 companies incorporated under the laws of the state of Pennsylvania. In bill No. 12,567 the complainants are 7 companies incorporated under the laws of the states of Massachusetts, New Jersey, Missouri, Minnesota, Wisconsin, Rhode Island, and Louisiana. The questions presented for deter-

mination in these several bills are substantially the same, and will therefore be considered together.

The bills allege that the complainants are corporations formed for the purpose of insuring against loss or damage by fire, and are engaged in carrying on the business of fire insurance in the state of California; that, before commencing the business, each of them, in accordance with the law of the state, procured from the insurance commissioner of the state, then in office, a certificate of authority, authorizing it to transact insurance business in the state, and paid to the commissioner therefor the sum of $20 for each certificate as required by law; that these certificates are still in force, and have not been canceled, revoked, surrendered, or in any wise impaired; that each of the complainants, at all the times mentioned in the complaint, was, and has continued to be, and is, fully solvent; that they have not at any time transferred or caused to be transferred to the United States circuit court any action commenced against them, or any of them, in a court of the state of California; and that they have at all times complied with the laws of the state. The bills allege, further, that in the year 1885 the legislature of the state of California passed an act entitled "An act to require the payment of certain premiums to counties, and cities and counties, by fire insurance companies not organized under the laws of the state of California, but doing business therein, and providing for the disposition of such premiums"; that, by its terms, this act purported to require the agents of corporations not incorporated under the laws of this state, but carrying on the business of fire insurance therein, to pay to the county treasurer of every county, or city and county in this state, for the use and benefit of the firemen's fund of said county, or city and county, on the first Monday in December of each year, a sum equal to 1 per cent. upon the amounts of all premiums which, during the year or part of a year ending on the last preceding Monday of September, should have been received by such agent or person, or any other person or agent, acting during such period for such corporation so engaged in such business, or should have been agreed to be paid to such corporation or its agents, for any insurance effected or agreed to be effected by such corporation within the limits of such county, or city and county; that this act is in violation of the constitution of the state of California, and is null and void, and has been so adjudged by the supreme court of the state of California; that, notwithstanding the invalidity of such act, the defendant, as insurance commissioner, claims and asserts that the act of the legislature is valid, and that all foreign corporations carrying on the business of fire insurance in this state are under obligations to pay said taxes, and claims and asserts that, in case of failure so to do, such foreign corporations may and should be prevented from carrying on the business of fire insurance in this state; that the defendant, as insurance commissioner, further claims and asserts that he has power and authority conferred upon him by the laws of the state, as such insurance commissioner, to enforce the payment by said foreign corporations of such taxes, or, failing in such payment, to exclude

such corporations from carrying on the business of fire insurance in this state; that none of the complainants have paid any taxes or percentages required to be paid by the act of the legislature since the year 1885; that the amount of such taxes and percentages remaining unpaid, and which would be due and payable by the complainants if the said act of the legislature were valid, is the sum of $278,000 and upward; that the defendant, as insurance commissioner, demanded from each of the complainants, in respect to the business respectively transacted by them, the payment of said taxes accrued since the year 1885, and demanded that such payment be made, or that each of the complainants cease the transaction of insurance business in this state on or before the 1st day of February, 1898; that the defendant threatens and intends, in case said taxes be not paid as demanded, to revoke the certificates of authority held by the complainants, and forbid them from transacting the business of fire insurance in this state, and threatens and intends, after revoking said certificates of authority, to give notice to the public, by advertisements in newspapers, that said certificates have been revoked, and that complainants are forbidden to transact the business of fire insurance in this state, and that all policies of insurance and contracts made by them thereafter will be null and void; that complainants have been transacting the business of fire insurance in this state for a number of years; that each of them has established agencies throughout the state of California at divers places, and that each of them has expended large sums of money in establishing said agencies, and in advertising their business, and in providing supplies therefor; that each of the complainants has a large and valuable business in the state of California, of the value of $20,000 and upward; that if the defendant be permitted to carry his threats into execution, and revoke said certificates of authority, complainants, and each of them, will be obstructed in the conduct of their business, their customers and the public will be deterred from accepting their policies of insurance, and will insure their property with other insurance companies, and that the business of each of the complainants, at present large and valuable, will be utterly ruined and destroyed; that if the defendant be not restrained by injunction, and be permitted to carry his threats into execution, multiplicity of suits will result, in that each of the complainants will be compelled to commence an action for damages against the defendant, and in that the defendant will commence actions to recover penalties against the agents of each of the complainants continuing to transact business, pursuant to the provisions of section 596 of the Political Code of the state of California; that the complainants are without adequate remedy at law in the premises; that the injury threatened to them is irreparable; and that the damages which will be sustained by them are difficult or impossible of exact ascertainment.    The prayer of the bill in case No. 12,557 is that it be adjudged by the decree of the court that the act of the legislature of 1885 is null and void, and that the complainants are not under any obligation to pay the taxes or percentages therein mentioned, either as a tax or as a condition of their

doing the business of fire insurance in this state; that the defendant be enjoined and restrained from revoking the certificates of authority, or any of them, issued to the complainants, or from in any manner obstructing or interfering with the complainants, or any of them, or their agents, in the transaction of fire insurance business in the state of California, and for a writ of injunction pendente lite, restraining the defendant from doing any of the acts mentioned in the bill of complaint.

The bill of complaint in case No. 12,557 was filed January 27, 1898, and on the same day an order was issued requiring the defendant to show cause, on February 7, 1898, why an injunction should not issue as prayed for in the bill of complaint, and in the meantime the defendant was restrained from doing any of the acts or things mentioned in the bill of complaint, and threatened by him, and from revoking any of the certificates of authority theretofore issued by the insurance commissioner of the state of California to the complainants, or any of them, and from interfering with or obstructing the complainants, or any of them, or their agents, in the transaction of fire insurance business in the state of California. After the filing of the bill, and after the order to show cause had been issued and served, to wit, on the 28th day of January, 1898, the defendant appeared before the judge of this court in chambers, and asked for and obtained a modification of the restraining order, striking therefrom the provision restraining the defendant from interfering with or obstructing the complainants, or any of them, or their agents, in the transaction of fire insurance business in the state of California.

On February 7, 1898, the complainants appeared, and filed a supplemental bill of complaint, in which it is alleged that the modification of the restraining order was obtained at about the hour of 3 o'clock p. m. on Friday, the 28th day of January, 1898, and that at the hour of 12:30 o'clock p. m. on Saturday, the 29th day of January, 1898, the defendant made and filed in his office an official order or document, wherein he recited that it appeared to him that the bonds theretofore given by the complainants, and each of them, were insufficient and invalid, and that he, as insurance commissioner, by virtue of the powers vested in him by the laws of the state, did thereby adjudge and determine each and every of said bonds to be invalid and insufficient, and, accordingly, that each and every of the complainants and their agents were therefore required to forthwith renew said bonds by substituting valid and sufficient bonds duly approved by him in place thereof; that said order contained no other matter or information than as herein stated, save the names of the companies whose bonds were declared to be invalid, their agents, and the dates of filing the same, and that it in no wise indicated wherein or for what reasons the said bonds were found or determined to be invalid or insufficient; that, upon the complainants being notified by the defendant that he claimed that their bonds were invalid and insufficient, their attorneys called upon the defendant, and inquired in what respect their bonds were invalid and insufficient; that the defendant refused to give any reply other than to refer to the order which he had made; that inquiry was made as to whether it was claimed

by him that any of the sureties upon any of the bonds were insolvent or insufficient in point of financial capacity, to which inquiries the defendant refused to make answer save to refer to the order he had made; that the defendant was requested to furnish a form of a bond or specify the terms of a bond which would be satisfactory to him) with which request the defendant refused to comply. It is further alleged that on the 30th day of January, 1898, the defendant made the following statement, well knowing and intending that it would be published in the newspaper, and thus give widespread circulation throughout the state:

"I have made my order, and my future action depends upon what the insurance companies may have to say. Do I think they will furnish new bonds? I think they will, but whether I will approve them is another question. If the bond is not acceptable, I have the right to reject it, and deny to the company a certificate to do business in the state. I shall certainly refuse the bond of any company which is in arrears for the tax provided by the law of 1885. They claim, of course, that this has been declared unconstitutional by the supreme court. Well, I don't dispute that. I am aware that the supreme court decided against the law on the ground that it was an attempt on the part of the legislature to levy a municipal tax. Of course, under that ruling it would be absurd to undertake the collection of the tax by process of law; but, if the companies don't desire to comply with what the law intends, there is no reason why they should not be barred from doing business here."

It is alleged that the bonds were in strict accordance with the laws of the state, and in all respects valid and sufficient, and each for the sum of $2,000; that prior to making the order of January 29, 1898, the defendant did not make investigation of the facts concerning the alleged invalidity or insufficiency of such bonds, and did not, in fact, exercise any judgment or discretion in relation thereto; and that no fact or circumstance showing, or tending to show, the invalidity or insufficiency of said bonds, or any of them, was ascertained by or brought to the knowledge of the defendant, or existed in fact. The bill contains further allegations denying the good faith of the defendant in his statements and actions respecting the validity and sufficiency of the bonds, his refusal to approve new bonds, and his expressed intention to refuse to approve any of the new bonds prepared and executed by the complainants unless they shall first pay the taxes attempted to be imposed by the act of 1885. The prayer of the supplemental bill is that the defendant be enjoined and restrained from further declaring or asserting to be invalid or insufficient the complainants' bonds, or any of them, and from instituting or causing to be instituted, or from inciting others to institute, any suits, actions, or proceedings against complainants, their agents or brokers, or any of them, and from in any way obstructing or interfering with complainants, or any of them, or their agents, in the transaction of fire insurance business, and for a writ of injunction pendente lite restraining the defendant from doing any of the acts mentioned in the supplemental bill. A second order was thereupon issued, requiring the defendant to show cause, on February 14, 1898, why a writ of injunction should not issue as prayed for in the supplemental bill; and, pending the hearing, the defendant was restrained from further declaring or asserting the invalidity or insufficiency of complainants' bonds, and from in any manner obstructing or interfering

with the complainants, or any of them, or their agents, in the transaction of fire insurance business.

It is insisted on behalf of the defendant that the act of the legislature of 1885 is not null and void, and is not in violation of the constitution of the state of California, or of the constitution of the United States, but that it is a valid and subsisting condition precedent to the transaction of business in said state by the corporations which it affects. The defendant has, however, in response to the order to show cause, filed a voluminous affidavit, in which he alleges, among other things, that, as insurance commissioner, he does not claim or assert, and never has claimed or asserted, that he has power and authority conferred upon him, by the laws of the state of California, to enforce the payment by foreign corporations of the taxes provided for by the said act of the legislature, or, failing in such payment, to exclude such corporations from carrying on the business of fire insurance in the state; that, as insurance commissioner, he does not threaten or intend, and has never threatened or intended, in case said taxes be not paid on or before the 1st day of February, 1898, to revoke the certificates of authority held by the complainants, or to forbid them from transacting the business of fire insurance in the state; that he will not carry any of the threats referred to in the bill into execution, nor will he revoke any of the certificates of any of said complainants, nor will he give public notice that he will carry such threats into execution or revoke such certificates, or any of them, nor warn all or any persons that policies of insurance or other contracts made by them thereafter will be null and void. With respect to the matters set forth in the supplemental bill of complaint, defendant alleges that no one of the complainants gave a bond pursuant to the provisions of section 623 of the Political Code of California; that defendant, in rejecting the bonds offered and tendered by the complainants, and in holding them to be insufficient and invalid, did so after due examination and investigation into the matter, and in the exercise of discretion conferred upon him by law. This allegation is repeated in other forms, but, in substance, the claim of the defendant is that, in declaring the bonds of the complainants to be invalid and insufficient, he made full and complete investigation of the facts concerning their invalidity and insufficiency, and did, in fact, exercise his official judgment and discretion in relation thereto, and did ascertain facts and circumstances showing, and tending to show, the invalidity and insufficiency of each and all of said bonds, and that he is ready and willing to approve of valid and sufficient bonds when furnished by insurance companies authorized to do business under the laws of the state. The defendant further alleges that the complainants should not be heard nor permitted to prosecute or maintain these actions against the defendant, for the reason that the complainants are now, and have been for many years, transacting insurance business in the state of California as members of a certain illegal combination and compact known and designated by the name of the "Board of Fire Underwriters of the Pacific"; that the main purpose of this organization is to prevent and suppress competition in the insurance business, to control the fixing of, and to fix, the

rates of premiums to be charged on insurance, to regulate and prevent rebates, to fix the compensation for insurance business, to regulate premium collections, and to appoint agencies; that seven-eighths of the insurance companies authorized to transact business in this state are members of this combination. The defendant sets forth in full the constitution of the Board of Underwriters of the Pacific, and claims that it necessarily results therefrom that the complainants are engaged in carrying on business in an unlawful manner, and that the action of the complainants against the defendant is in furtherance of such unlawful interference; and, as evidence of the truthfulness of this charge, he refers to a circular dated February 24, 1898, addressed to the local fire insurance agents in this state by the Board of Fire Underwriters of the Pacific, concerning the action of the insurance commissioner in declaring the bonds of the complainants invalid, the proceedings in this court, and the fact that the companies are conducting business as usual.

A preliminary objection has been made by the defendant that the bills are multifarious, on the grounds that, while it appears that the complainants are all interested in the question involved in the controversy, their interests are otherwise severable, distinct, and independent, and that they are therefore not entitled to unite in these several actions. As this objection is directed to matters appearing on the face of the bills, it should properly be raised by demurrer. It is, however, urged as a parol exception to the legal sufficiency of the bills under rule 67 of this court. The exception cannot be sustained. A court of equity will, in a single suit, take cognizance of a controversy, determine the rights of all the parties, and grant the relief requisite to meet the ends of justice in order to prevent a multiplicity of suits, where a number of persons have separate and individual claims and rights of action against the same party, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter may be settled in one action brought by all these persons uniting as co-plaintiffs. Pom. Eq. Jur. §§ 243, 245, 255, 269; Libby v. Norris, 142 Mass. 246, 7 N. E. 919; Osborne v. Railroad Co., 43 Fed. 824; Railroad Co. v. Gibson, 85 Ga. 1, 11 S. E. 442; Sang Lung v. Jackson, 85 Fed. 502, 504; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418.

The case of Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, cited by the defendant as sustaining his objection, is, in my opinion, not opposed to this doctrine. It appears in that case that James Donald, a citizen of the United States and of the state of South Carolina, in his own behalf and on behalf of all other persons in the state of South Carolina as importers for their own use and consumers of wines, ales, and spirituous liquors, the products of other states and foreign countries, filed a bill in equity against J. M. Scott et al., claiming to act as constables of the state of South Carolina, and all other persons whomsoever claiming to act as constables, or as county sheriffs, municipal policemen, or executive officers or county sheriffs, or in any capacity whatsoever under or by virtue of a certain act of the legislature of the state of South Carolina. The action was to restrain the defendants from forcibly entering or attempting to search

the dwelling house of the plaintiff for liquors of the character mentioned, and from hindering and preventing the plaintiff or any other person from importing, holding possession, and using the said liquors so imported. A preliminary injunction was issued as prayed for in the bill of complaint, and afterwards, upon the pleadings and agreed statement of the facts, the injunction was made perpetual. In the supreme court of the United States, upon a writ of error, the decree was affirmed, but restricted to the parties named as plaintiffs and defendants in the bill. The objection to the decree as to parties not named as plaintiffs was that as to them the complainant assumed to act in a representative capacity for a class of numerous persons situated like himself with respect to the matter in controversy. The court held that such a state of facts was too conjectural to furnish a safe basis upon which a court of equity ought to grant an injunction, meaning, of course, an injunction in favor of plaintiffs, and binding upon defendants not named in the bill; for the court expressly held that the complainant was entitled to an injunction against those defendants who had despoiled him of his property, and who were threatening to continue to do so, and upheld the decree of the circuit court to that extent. In the present case the plaintiffs do not act in a representative capacity, but all are parties to the several bills, by a classification under which the plaintiffs in each suit have the same corporate rights and are under the same corporate obligations with respect to the business in which they are engaged.

In Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, the supreme court had before it three cases involving the constitutionality of an act of the legislature of the state of Nebraska, regulating railroads, classifying freights, fixing reasonable maximum rates, etc. There, as here, all the plaintiffs were interested in the subject-matter of the controversy, but were classified in three suits with respect to their rights under certain corporate franchises. The opinion of the court with respect to the question as to what community of interests will entitle plaintiffs to unite in one action to avoid a multiplicity of suits is peculiarly applicable to the facts in the cases at bar, and appears to determine the question beyond controversy. The court says:

"In these cases, the plaintiffs, stockholders in the corporations named, ask a decree enjoining the enforcement of certain rates for transportation, upon the ground that the statute prescribing them is repugnant to the constitution of the United States. Under the principles which in the federal system distinguish cases in law from those in equity, the circuit court of the United States, sitting in equity, can make a comprehensive decree covering the whole ground of controversy, and thus avoid the multiplicity of suits that would inevitably arise under the statute. The carrier is made liable not only to individual persons for every act, matter, or thing required to be done, but to a fine of from $1,000 to $5,000 for the first offense, from $5,000 to $10,000 for the second offense, from $10,000 to $20,000 for the third offense, and $25,-000 for every subsequent offense. The transactions along the line of any one of these railroads, out of which causes of action might arise under the statute, are so numerous and varied that the interference of equity could well be justified upon the ground that a general decree, according to the prayer of the bills, would avoid a multiplicity of suits, and give a remedy more certain and efficacious than could be given in any proceeding instituted against the company in a court of law; for a court of law could only deal with each sep-

arate transaction involving the rates to be charged for transportation. The transactions of a single week would expose any company questioning the validity of the statute to a vast number of suits by shippers, to say nothing of the heavy penalties named in the statute. Only a court of equity is competent to meet such an emergency, and determine once for all, and without a multiplicity of suits, matters that affect not simply individuals, but the interests of the entire community as involved in the use of a public highway, and in the administration of the affairs of the quasi public corporation by which such highway is maintained."

It is further objected by the defendant that the complainants should not be allowed to come into a court of equity for relief; and in support of this objection he invokes the maxim that he who comes into a court of equity must do so with clean hands. The inequitable conduct charged against the complainants is that they are members of an illegal combination and compact known and designated by the name of the "Board of Fire Underwriters of the Pacific"; that the main purpose of this association is to prevent and suppress competition in the insurance business in this state, to control the fixing of premium rates to be charged on insurance, to regulate and prevent rebates, to fix compensation for insurance, to regulate premium collections, and to appoint agencies; that seven-eighths of the insurance companies authorized to transact business in the state are members of this confederation. In opposition to this charge, the affidavit of Rolla V. Watt, who is the general manager of the Royal Insurance Company and the Queen Insurance Company, and also a member of the executive committee of the Board of Fire Underwriters of the Pacific, alleges that the last-named association is not an incorporation or association formed for business purposes, and is not conducting any independent business on its own behalf; that it is merely the agent of the several insurance companies carrying on business in this state which are members thereof for the more convenient transaction of business between themselves; that it has not nor does it attempt to exert any influence or control over persons or corporations who are not members thereof; that its purpose is not to stifle competition, nor to restrict the amount of insurance business done, but, by co-operation, to induce owners of property to take greater precautions to avoid loss and damage by fire, and to adopt inventions and other means to that end, such inducement being effected by reducing rates of premium; also to prevail upon the several municipalities of the state to maintain fire departments, and adopt means and inventions of preventing and suppressing loss by fire, to assist the public authorities to prosecute and condemn persons guilty of arson, and by divers other means and ways to decrease the amount of loss by fire, and to reduce the hazards of the fire insurance business, and also to establish rates of premium which are reasonable and uniform and only fairly remunerative, based upon the combined experience of all the members thereof; that a large number of insurance companies doing business in this state are not members of said Board of Fire Underwriters; that said insurance companies so doing business in this state, and which are not members of said association, have in fact the capacity to transact all the insurance business in this

state if the same were intrusted to them, and might do so with safety to themselves, by reinsuring with other insurance companies in the United States, in which there are, in number, 175 or thereabout. It will not be necessary to enter into a discussion of the facts thus presented for the purpose of determining the legality of the Board of Underwriters in this action, or to ascertain how far its acts are open to just criticism. It is manifest that, if such a controversy is disclosed, it is foreign to the one now before the court. The maxim that he who comes into equity must come with clean hands has its limitations. It does not apply to every unconscientious act or inequitable conduct on the part of the complainants. The inequity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct unconnected with the act of the defendant which the complaining party states as his ground or cause of action, but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought. Woodward v. Woodward, 41 N. J. Eq. 224, 4 Atl. 424; 1 Pom. Eq. Jur. 399.

The declarations of the defendant, in his affidavit, disclaiming all power and authority as insurance commissioner to enforce the payment of the taxes provided for by the act of the legislature of 1885, and the power to exclude foreign insurance corporations from the state who fail to pay such taxes, and his further disclaimer of any intention to revoke their certificates of authority to transact fire insurance business in the state, would dispose of that feature of the controversy, but for the fact that the defendant insists that the act of 1885 is constitutional, and a valid and subsisting condition precedent to the transaction of business by the corporations to which it relates, and the fact that prior to the commencement of these suits he had so notified the 34 foreign insurance companies constituting the complainants in case No. 12,557, officially in writing, and had demanded that they should forthwith comply with the terms of the law, and make the payments therein required, or that they should cease the transaction of fire insurance business in this state. This notice called the attention of the insurance companies to section 595 of the Political Code of the state, providing that "the insurance commissioner * * * must issue a certificate of authority to transact insurance business in this state to any persons in a solvent condition, who have fully complied with the laws of this state, and are in no wise in arrears to the state, or to any county or city of the state, for fees, licenses, taxes, or penalties accrued upon business previously transacted in the state." The notice also called attention to the fact that in the same section it was made the duty of the insurance commissioner to perform "all other duties imposed upon him by the laws regulating the business of insurance in this state, and enforce the execution of such laws," and that in section 596 of the same Code, it was provided that "no person or company must transact insurance business in this state without first procuring from the insurance commissioner a certificate of authority, as in this chapter provided." This notice was issued from the office of the commissioner on December 31, 1897, and does not appear to have been recalled or

suspended except in so far as it may be deemed to be inconsistent with the declarations contained in the defendant's affidavit on the present hearing. Moreover, the defendant, in declaring the bonds of all the complainants insufficient and invalid, on the 29th day of January, 1898, without previous notice, undertook to deprive the complainants of their authority to transact business in this state, and to compel them to furnish new bonds and to procure new certificates. No reason was given in the order for this action, and the charge that it was an arbitrary proceeding is supported by the fact that the bonds which the defendant declared insufficient and invalid were made out on forms prescribed by the insurance commissioner of the state, and two of them had been previously accepted and approved by the defendant himself. It appears, further, that, on the 30th day of January, 1898, the defendant made this declaration:

"I have made my order, and my future action depends upon what the insurance companies may have to say. Do I think they will furnish new bonds? I think they will, but whether I will approve them is another question. If the bond is not acceptable, I have the right to reject it, and deny to the company a certificate to do business in the state. I shall certainly refuse the bond of any company which is in arrears for the tax provided by the law of 1885. They claim, of course, that this has been declared unconstitutional by the supreme court. Well, I don't dispute that. I am aware that the supreme court decided against the law on the ground that it was an attempt on the part of the legislature to levy a municipal tax. Of course, under that ruling it would be absurd to undertake the collection of the tax by process of law. But, if the companies don't desire to comply with what the law intends, there is no reason why they should not be barred from doing business here."

It is manifest from this statement that the original purpose of the defendant was to compel the insurance companies not incorporated by or under the laws of this state to pay the taxes provided for in the act of March 3, 1885; and, notwithstanding the positive assertions of the defendant in his affidavit to the contrary, it is not clear that he has entirely abandoned that purpose. There is, indeed, some ground for believing that he is endeavoring to accomplish indirectly what he is not able to accomplish directly, and it therefore becomes important to determine preliminarily the validity of the act of March 3, 1885.

The constitution of the state of California, adopted in 1879, provides, in article 11, § 12, that:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

Pursuant to this provision of the constitution, the legislature established a uniform system of county and township governments by the act approved March 14, 1883 (St. 1883, p. 299), and provided for the organization, incorporation, and government of municipal corporations by the act approved March 13, 1883 (St. 1883, p. 93). By these acts, the legislature, as required by the constitution, vested in the county and municipal corporations of the state full power and authority to assess and collect taxes for county and municipal

purposes. Notwithstanding this distribution of the power of taxation for local purposes, the legislature, by the act of March 3, 1885, undertook to exercise that power for the purpose of raising a revenue from foreign insurance companies to establish a firemen's relief fund, to be disbursed locally. The first section of the act provided that every agent of every fire insurance corporation or company not incorporated under the laws of the state should pay into the hands of the treasurer of the county, or city and county, in the state, a sum equal to 1 per centum upon the amount of all premiums which, during the year, or part of a year, ending on the last preceding first Monday of September, shall have been received by such agent or person, or any other person or agent acting during such period for said corporation or company so engaged in said business, or which shall have been agreed to be paid such corporation or company, or his or their agents, for any insurance effected, or agreed to be effected, by such corporation or company, against loss or injury by fire upon property situate within the limits of said county, or city and county. The second section required that the tax provided for by the act, when paid or collected by the person or officer entitled thereto, should constitute a fund, to be known and designated as the "Firemen's Relief Fund," of the county, or city and county, in which the property insured, or agreed to be insured, is situated. The third section provided that such fund should be under the exclusive control of the fire commissioners, or other governing body of the fire department or fire departments of such county, or city and county, under such regulations as the board of supervisors thereof might prescribe. The other sections of the act provided for the disposition of the fund thus raised, authorizing them to be disbursed by officers and to members of the fire department of the city, or the city and county, to whose treasurer they were required to be paid. St. Cal. 1885, p. 13.

In 1886 the city and county of San Francisco brought suit in the superior court of the city and county of San Francisco to recover from the Liverpool & London & Globe Insurance Company the sum of $441.36, alleged to be due under the provisions of this act. The defendant demurred to the complaint, on the ground that the act was unconstitutional and void. The demurrer was overruled, and a judgment entered in favor of the plaintiff. On appeal to the supreme court of the state, the judgment was reversed, the court holding that the act attempted to impose a charge for the purpose of revenue, and was a tax imposed by the legislature of the state for municipal purposes, and therefore unconstitutional and void, and that, as a condition upon which foreign corporations might be permitted to do business in the state, it was void, for the reason that the legislature could not exercise a power clearly denied to it by the constitution of the state. San Francisco v. Liverpool & L. & G. Ins. Co., 74 Cal. 113, 15 Pac. 380. This decision certainly disposes of the contention that the terms of the act may be enforced as a condition, if not as a tax; and, as it is a construction placed by the highest court of the state upon its own constitution and statute, it is binding upon this court, and must be followed. Forsyth v. Hammond, 166 U. S. 506, 518, 17 Sup. Ct. 665.

In Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121, certain persons who undertook to act as county commissioners were adjudged to be usurpers as against others who were lawful officers; and it was held by the supreme court that, as the act of the legislature which created the board of commissioners was unconstitutional, there were no de facto officers, and therefore no de jure officers; and, answering the argument that a legislative act, though unconstitutional, might in terms create an office, and that nothing further than its apparent existence was necessary to give validity to the acts of the assumed incumbent, Mr. Justice Field, speaking for the court, said:

"An unconstitutional act is not a law. It confers no rights. It imposes no duties. It affords no protection. It creates no office. It is, in legal contemplation, as inoperative as though it had never been passed."

But, as the defendant does not now claim that he can enforce this law against the complainants, this feature of the case may be dismissed without further comment, except to say that the defendant's action, on January 29, 1898, in declaring that the complainants' bonds were insufficient and invalid, cannot be justified for the reasons given by him in his statement of January 30, 1898. He then declared that he would certainly refuse the bond of any company that was in arrears for the tax provided by the act of 1885. This declaration was, in effect, a notice that the bonds of the 83 insurance companies, which he had adjudged insufficient and invalid on the·29th day of January, 1898, had been so adjudged by reason of such arrearage.

We come now to the consideration of the defendant's action in declaring the bonds in question insufficient and invalid, aside from the reasons given by him for such action on January 30, 1898. It is contended, on behalf of the defendant, that the complainants were not entitled to know his reasons; that he was exercising quasi judicial powers in passing upon the sufficiency and validity of their bonds; and that his action in that respect cannot be reviewed by the court in this proceeding.

Section 595 of the Political Code of·California provides that:

"The insurance commissioner must receive all bonds and securities of persons engaged in the transaction of insurance business in this state, and file and safely keep the same in his office, or deposit them as provided in this article. He must examine and inspect the financial condition of all persons engaged, or who desire to engage, in the business of insurance; issue a certificate of authority to transact insurance business in this state to any persons in a solvent condition, who have fully complied with the laws of this state, and are in no wise in arrears to the state, or to any county or city of the state, for fees, licenses, taxes, or penalties accrued upon business previously transacted in the state; determine the sufficiency and validity of all bonds and other securities required to be given by persons engaged, or to be engaged, in insurance business, and cause the same to be renewed in case of the insufficiency or invalidity thereof. * * *"

Section 623 of the same Code provides that:

"The commissioner must require every company, association, or individual, not incorporated under the laws of this state, and proposing to transact insurance business by agent or agents in this state, before commencing such business to file in his office a bond, to be signed by the person or firm, officer or agent, as principal, with two sureties, to be approved by the commissioner, in the penal sum of two thousand dollars for each insurance company, association, firm, or individual for whose account it is proposed to collect premi-

ums of insurance in this state, the conditions of such bonds to be as follows: (1) That the person or firm, agent or officer, named therein, acting on behalf of the company, association, firm or individual named therein, will pay to the treasurer of the county, or city and county, in which the principal office of the agency is located, such sum per quarter, quarterly in advance, for a license to transact an insurance business, or such other license as may be imposed by law, so long as the agency remains in the hands of the person or firm, officer or agent, named as principal in the bond. (2) That the person or firm, officer or agent, will pay to the state all stamps or other duties on the gross amounts insured by them, in the manner and at the time prescribed by law, inclusive of renewals on existing policies. (3) That the person, firm, agent, or corporation named therein will conform to all the provisions of the revenue and other laws made to govern them."

It is alleged in the bill of complaint that the bonds of the complainants, which the defendant adjudged to be insufficient and invalid, were each of them given pursuant to the provisions of this section of the Political Code; that no previous notice was given to the complainants of the alleged insufficiency or invalidity of said bonds, or any of them, nor was any opportunity given to the complainants, or any of them, to renew said bonds, or any of them; that the bonds were in fact according to the form which had been provided for many years last past by successive insurance commissioners of this state, and were in form and substance such as had been accepted and approved by the defendant himself since he had been insurance commissioner. A copy of the form of the bond furnished by each of the complainants is attached to the bills of complaint, from which it appears that the terms and conditions of the bonds are strictly in accordance with the requirements of the statute. It appears, further, that the defendant was appointed insurance commissioner March 3, 1897, and again on May 18, 1897. He qualified on May 19, 1897, under the last appointment; and from the last date, if not before, he discharged the duties of insurance commissioner. From May 19, 1897, to January 29, 1898, without any objection whatever, he treated complainants' bonds as valid and subsisting obligations, securing the state against any default on account of taxes, and entitling the complainants to transact insurance business in this state. But, assuming that after investigation the defendant did discover that the securities of these bonds were not sufficient, or that the conditions of the bonds were not in accordance with the statute, was it not his duty, as an officer of the state, charged with the administration of the laws regulating the business of insurance, to notify the complainants of the defect, and require that the law should be observed? He was authorized to cause a renewal of insufficient and invalid bonds; but how could the complainants furnish sufficient and valid bonds by renewal unless they were advised in what particular they were' defective? The practical difficulties arising out of a refusal to give such a notice is well illustrated by the proceedings which took place before the commissioner after he made his order of January 29, 1898, declaring the bonds insufficient and invalid. He was asked by the complainants in what respect the bonds were insufficient and invalid, and he refused to reply other than to refer to the order he had made. He was asked if the bonds were defective in form, or

whether he claimed the sureties were insolvent or insufficient in point of financial ability.    He was also asked to furnish the form of a bond, or specify the terms of a bond that would be satisfactory, but to all these inquiries he gave no further information than to refer to the terms of his order.    It appears, however, that the defendant did, as insurance commissioner, on the 1st day of February, 1898, accept from the Continental Insurance Company of New York a bond in the identical form of the bonds adjudged to be insufficient and invalid on January 29, 1898; and on the 2d day of February, 1898, he accepted the American Surety Company of New York as a surety on the bond of the United States Fidelity & Guarantee Company of Baltimore.    The complainants, acting upon the supposition that bonds in the form and with the surety of the bonds which the commissioner had accepted would also be accepted from them, prepared renewal bonds in such form and with such surety, and on February 3, 1898, deposited them with the defendant, as insurance commissioner.    On the 7th day of February, 1898, the defendant made an order adjudging and determining that each and every one of these renewal bonds was invalid and insufficient, and declined to approve or file the same.    The order is preceded with a written opinion, in which the commissioner states his objections to these renewal bonds.    These objections are, in substance, as follows:

(1) It is objected that each of the companies executing the bonds is a member of the organization or association known as the "Board of Underwriters of the Pacific"; that the purpose and effect of this association is to create a monopoly of the fire insurance business in this state, which, in the opinion of the commissioner, is unlawful, and against public policy and the interests of the state; and that no foreign corporation can come into the state, and enter into such an agreement, become a member of such association, and lawfully continue to transact business in this state.

(2) It is objected, against the bonds of the 34 foreign insurance companies, that the whole of the capital stock of such companies had not been paid up.

Section 15 of article 12 of the constitution of this state provides that:

"No corporation organized outside the limits of this state shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

And section 424 of the Civil Code of the state provides that:

"The entire capital stock of every fire or marine insurance corporation must be paid up in cash within twelve months from the filing of the articles of incorporation, and no policy of insurance must be issued or risk taken until twenty-five per cent. of the whole capital stock is paid up."

The commissioner holds, under these constitutional and statutory provisions, that no foreign corporation organized for more than one year is entitled to transact business in this state unless its entire subscribed capital stock has been paid up.

(3) It is objected that the consent of the stockholders of the for-

eign corporations had not been obtained for their individual and personal liability for the debts and liabilities of the corporations, as provided in section 322 of the Civil Code of the state. That section provides:

"Each stockholder of a corporation is individually and personally liable for such proportion of its debts and liabilities as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation, and for a like proportion only of each debt or claim against the corporation. * * * The liability of each stockholder of a corporation formed under the laws of any. other state or territory of the United States, or of any foreign country, and doing business within this state, shall be the same as the liability of a stockholder of a corporation created under the constitution and laws of this state."

(4) It is objected that complainants do not maintain an office or place in this state for the transaction of their business, where transfers of stock can be made, and in which shall .be kept (for inspection by every person having an interest therein, and legislative committees), books in which shall be recorded the amount of capital stock subscribed, and by whom, the names of the owners of the stock, and the amounts owned by them respectively, the amounts of stock paid in, and by whom, the transfers of stock, the amount of their assets and liabilities, and the names and places of their officers, as provided in section 14, art. 12, of the constitution of the state. That section provides:

"Every corporation other than religious, educational, or benevolent, organized or doing business in this state, shall have and maintain an office or place in this state for the transaction of its business, where transfers of stock shall be made, and in which shall be kept, for inspection by every person having an interest therein, and legislative committees, books in which shall be recorded the amount of capital stock subscribed, and by whom; the names of the owners of its stock, and the amounts owned by them respectively; the amount of stock paid in, and by whom; the transfers of stock; the amount of its assets and liabilities, and the names and place of residence of its officers."

(5) It is alleged: That in certain states of the Union the certificates of authority or license to transact insurance business in such states are of annual duration. That section 622 of the Political Code of California provides that:

"When by the laws of any other state or country, any taxes, fines, penalties, licenses, fees, deposits of money, or of securities, or other obligations, or prohibitions, are imposed on insurance companies of this state, doing business in such other state or country, or upon their agents therein, in excess of such taxes, fines, penalties, licenses, fees, deposits of securities; or other obligations or prohibitions, imposed upon insurance companies of such other state or country, so long as such laws continue in force, the same obligations and prohibitions of whatsoever kind must be imposed upon insurance companies of such other state or country doing business in this state. * * *"

—That the effect of this retaliatory law upon the insurance companies, from such states as provide for an annual certificate, is to limit the certificate of authority issued to them under the law of the state to one year. It is accordingly objected that all such companies who have not procured renewed certificates within one year are transacting business in this state contrary to law.

The commissioner concludes his opinion with the statement that:

"There are many other objections, founded upon the laws of this state, which I believe to be sufficient to justify me in withholding approval from these bonds, and in denying the applications to file same. I have carefully examined the said bonds, and the manner of their execution, and, with the exception of those furnished by the Home of New York and Phœnix of Hartford, I believe them to be insufficient in form and substance; and as to the two excepted, while not open to all the objections to which the others are subject, I am not satisfied as to their execution."

The commissioner thereupon adjudged and determined that each and every of said bonds was "invalid and insufficient."

We have in these objections the opinion of the commissioner concerning the renewal bonds, but he says nothing whatever about the original bonds, the sufficiency and validity of which are the essential questions involved in this controversy. It was assumed, however, upon the argument, that the objections of the commissioner to the renewal bonds were also applicable to the original bonds, and they will be so considered.

With respect to the first objection, it is sufficient to repeat what has been said before,—that the question raised is immaterial. It is a fact, however, that the question whether the Board of Fire Underwriters of the Pacific is an unlawful association or its purpose illegal was before this court in Continental Ins. Co. v. Board of Fire Underwriters of the Pacific, 67 Fed. 310. The subject was there discussed by Judge McKenna (now Mr. Justice McKenna of the supreme court) with great care, and the authorities relating to unlawful combinations elaborately reviewed. The learned judge arrived at the conclusion that the association was lawful and its purpose legal.

With respect to the other objections, it will not be necessary in these proceedings to ascertain to what extent the complainants in the transaction of insurance business in this state are subject to the constitutional and statutory provisions upon which the objections are based. The scope of the commissioner's power to declare bonds insufficient and invalid must be determined on other grounds.

It will be observed that no objection is made by the defendant to the sufficiency of the sureties on any of these bonds, and, with the exception of the general objection that the commissioner believes the bonds "to be insufficient in form and substance," no objection is made to their form. He points out no defect in the terms of any of the bonds, and does not claim that any of the conditions required by the statute have been omitted therefrom. The objections he has made, and which appear to have been prepared with some degree of care, are directed to matters that in no way affected the sufficiency or validity of the bonds under which the complainants were transacting insurance business in this state on the 29th day of January, 1898. The claim made on behalf of the defendant, that the statute clothes the insurance commissioner with a discretionary power in determining the sufficiency and validity of the bonds furnished by insurance companies, and that, in the exercise of this discretion, his acts cannot be reviewed by the courts, is not controverted by the complainants. They admit that if the solvency of the sureties to these

bonds was disputed, and the commissioner should in good faith institute an inquiry to determine that fact, and, upon the evidence, should adjudge that the bonds were not sufficient in point of financial ability to secure the state in the full principal sum of the bond, the judgment of the commissioner would be final, and not subject to review by the courts. It may be admitted, further, that, if the conditions of these bonds were such that they did not conform to the requirements of the statute, the judgment of the commissioner acting in good faith upon the question of their validity would be final, and not subject to review by the courts. But here we have the question whether the commissioner has the power to adjudge that the bonds of the insurance companies are insufficient and invalid for other and different reasons, and because, in his opinion, the companies have associated themselves together in an unlawful combination, or have not complied with some law of the state. These bonds contain the condition that the insurance company will "conform to all the provisions of the revenue and other laws made to govern them." Is it possible that upon the breach of this condition, and for that reason, the commissioner has the power to declare these bonds invalid? Manifestly not. The validity of the bond is the security which the state has for the enforcement of the law. But it may be said that the action of the commissioner had reference to the future, and not to the past; that, having discovered that the insurance companies were not complying with the law, he proposed to terminate their disobedience by canceling their bonds, and, by refusing to approve and file renewal bonds, compel them to leave the state. This is, in effect, exercising the power of revoking their certificates of authority to transact business in this state. If the commissioner has this power under such conditions, it must be found in the law in plain and explicit terms. It ought not to be matter of inference or the subject of mere conjecture. It should be positive and distinct, and in accordance with the manifest intent and purpose of the legislature. The commissioner has the power to revoke certificates of authority under which insurance companies are entitled to transact business in this state. This power is clearly and distinctly given in the statute, but the conditions under which it may be exercised are also clearly stated. By section 595 of the Political Code of California it is provided that the commissioner may revoke the certificate of any foreign corporation or company authorizing it to do business in this state whenever "such corporation or company shall transfer or cause to be transferred an action to the United States circuit court." By section 600 of the same Code it is provided that, "whenever the commissioner ascertains that any person engaged in the insurance business is insolvent within the meaning of this chapter, he must revoke the certificate granted, and send by mail to such person, addressed to him at his principal place of business, or deliver to him personally, notice of such revocation," etc. These are the only conditions under which the commissioner is authorized by the laws of the state to revoke a certificate, and, by a well-known rule of interpretation, the authority cannot be extended to other conditions or circumstances not mentioned in the statute. Suth. St. Const. Law, § 392.

We find, then, that, while the power of the commissioner in dealing with the bonds of the insurance companies and with the certificate of authority granted them to transact business in the state is clearly defined, it is, nevertheless, limited in its scope, and does not include the authority to declare complainants' bonds insufficient and invalid for any of the reasons disclosed in the defendant's affidavit.    How, then, can it be said that he was acting within his jurisdiction in the exercise of a legal discretion?    It is true that in section 595 of the Political Code, after enumerating certain duties of the commissioner, he is required to "perform all other duties imposed upon him by the laws regulating the business of insurance in this state, and enforce the execution of such laws." But this provision certainly does not enlarge his jurisdiction, or confer upon him any power or authority to perform a duty not specified, or to execute a purpose not sanctioned by the law.    U. S. v. Doherty, 27 Fed. 730, 733; U. S. v. Kirby, 7 Wall. 482, 486.    "Notwithstanding the words of the commission give authority to the commissioners to do according to their discretion, yet their proceedings ought to be limited and bound with the rule of reason and law."    Rooke's Case, 5 Coke, 99.

The duty the commissioner is required to perform in enforcing the execution of the laws against domestic insurance companies is clearly pointed out in section 601 of the Political Code, where it is provided:

"In case any person, upon the requisition of the commissioner, fails to make up the deficiency of the capital in accordance with the requirements of this chapter, or to comply in all respects with the laws of this state, the commissioner must communicate the fact to the attorney-general, who must, within twenty days after receiving such communication, commence an action in the name of the people of this state in the superior court of the county where the person in question is located or has his principal office, against such person, and apply for an order requiring cause to be shown why the business should not be closed," etc.

If the only purpose of this section is to close up the business of the delinquent corporation, and not to distribute its effects to the stockholders and creditors, as determined in State Inv. & Ins. Co. v. Superior Court of City and County of San Francisco, 101 Cal. 135, 146, 35 Pac. 549, it is not perceived why the section is not applicable to all insurance companies alike, whether foreign or domestic.    If a foreign corporation fails to comply with the laws of the state, is there any reason why that fact should not be determined by the court upon the suit of the attorney general, as in the case of a domestic corporation, when the remedy for the delinquency is to compel the corporation to cease doing business in the state?    There is certainly no reason in the general administration of the law, and none has been disclosed in any of the facts of the present case.

The conclusion to be drawn from these various provisions of the statute is that the duties of the insurance commissioner have been carefully prescribed and regulated.    If a foreign insurance corporation removes an action from the state court to the United States court, or becomes insolvent, the commissioner is required to revoke its certificate of authority to transact business in the state.    If the bond of such a corporation is discovered to be invalid by reason of the conditions being defective in form or substance, or if it be found

that the sureties are insufficient, in a financial point of view, to secure to the state the penal sum of the bond, then it is the duty of the commissioner to cause the bond to be renewed. If the commissioner discovers that such a corporation had failed to comply with the laws of the state in any respect, and no specific method of procedure has been prescribed by the statute, then the commissioner is required to communicate the fact to the attorney general of the state, who may proceed on the bond, or take such other action as may be appropriate under the circumstances. What can be more clear than the fact that it is not necessary to enlarge the commissioner's powers in one direction to secure an enforcement of the law in another?

In Com. v. City of Philadelphia (Pa. Sup.) 35 Atl. 195, a contract had been made by the board of education of the city of Philadelphia for a matter within their department, and they had issued a warrant for payment of the claim thereunder, and an alternative writ of mandamus had issued to compel the city comptroller to sign a warrant for the payment of the claim. The comptroller answered that it did not appear that the contract was made in accordance with an act governing such contracts; that the binding of the books, which were the subject of the contract, was so unsuitable as to render them unserviceable for public use; and that the relator was allowing a very large commission to the agent who secured the contract. The judgment of the court of common pleas of Philadelphia was in favor of the defendants. The supreme court, in passing upon the sufficiency of this answer on appeal, said:

"The answer appears to be based on a very exaggerated and erroneous idea of the controller's powers and authority, and the claim that he is 'not subject to the order or direction of the court' is not to be tolerated. The duties of the controller, as was held in Com. v. George, 148 Pa. St. 463, 24 Atl. 59, 61, are partly ministerial and partly discretionary; and, while the courts will not review his discretion, exercised in a proper case, yet he is not above the law, and his discretion is not arbitrary, but legal. When, therefore, he is called upon by the courts, the facts must be made to appear sufficiently to show that they bring the case within his discretion, and that it was exercised in obedience to law. On this subject the courts are the final authority, and their jurisdiction cannot be ousted by simply putting forth the assertion of discretionary power, without showing that the matter was properly within such discretion. * * * The only contest comes from the controller, and his grounds of objection, set out at length in his answer, show that none of them were founded on matters within his discretion. Had any of them been valid, the court would not review his decision in regard to the facts; but when, admitting all the facts, none of the reasons are sufficient, the courts, and not the official, must determine the rights of the parties. This is the rule even in cases of discretion vested in strictly judicial tribunals (In re Johnson's License, 156 Pa. St. 322, 26 Atl. 1066; Gross' License, 161 Pa. St. 344, 29 Atl. 25; Gemas' License, 169 Pa. St. 43, 32 Atl. 88); and a fortiori must it be the rule where the discretion, though ample and exclusive, is reposed in a tribunal or an official who is only quasi judicial within prescribed limits."

The judgment of the lower court was accordingly reversed, and mandamus directed to be issued.

Applying the doctrine of this case to the case at bar, and it appears to dispose of all the objections which the defendant has raised to the present proceedings. The duty of the commissioner is partly minis-

terial and partly discretionary. With respect to the performance of those duties in which he exercises his discretion in good faith, the courts will not review his judgment or restrain his action; but the discretion he may thus exercise must be a legal discretion, and within the limitations of his authority. He cannot act arbitrarily or capriciously, or in disregard of the established rules of law; and, when he is called upon by the court to answer the charge that his conduct is illegal, oppressive, and injurious, he should be able to present such facts as will clearly show that he is acting under authority and within the jurisdiction of his office. It is true, the defendant alleges in his affidavit that in rejecting the bonds offered and tendered by the complainants, and in holding them to be insufficient and invalid, he did so after an examination and investigation into the matter, and in the exercise of the discretion conferred upon him by law; but, from other facts alleged by the complainants, and not denied by the defendant, this allegation appears to be in the nature of an opinion which the defendant himself formed as to the character of his own acts in the premises. That there have been evils in the administration of the insurance law may be admitted; that the defendant believes it to be his duty to make the office of commissioner efficient and of substantial benefit to the public may also be conceded; but it does not follow that he may adopt any course or pursue any method that will accomplish the purpose he has in view. The law furnishes the guide and regulates the performance of official conduct, and will be construed as conferring those powers only which are expressly imposed or necessarily implied. Mechem, Pub. Off. § 511. A temporary injunction will issue, in accordance with this opinion.